IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| HAROLD P. MCSHANE, III,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>DEPARTMENT OF PARKS AND<br>RECREATION, CITY AND COUNTY OF<br>HONOLULU; HONOLULU CIVIL<br>SERVICE COMMISSION,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>) Civ. No. 20-00244-ACK-WRP<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING THE COMMISSION'S MOTION TO DISMISS [ECF NO. 21]
AND GRANTING THE CITY'S MOTION FOR JUDGMENT ON THE PLEADINGS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT [ECF NO. 22]**

This case arises from an employment dispute between Plaintiff Harold P. McShane and his employer, Defendant Department of Parks and Recreation, City and County of Honolulu (the "City").  Shortly after beginning his job with the Department of Parks and Recreation, McShane was placed on leave without pay pending an investigation of allegations of disruptive behavior and workplace misconduct.  He was soon terminated in August 2017.  McShane challenged his termination before Defendant Honolulu Civil Service Commission (the "Commission")—a government body that hears and decides city employees' appeals of employment decisions.  The Commission found in the McShane's favor.  It directed that he be

reinstated, with some conditions, but it did not specify whether or not backpay should be awarded for lost wages. The Commission's ruling was affirmed in Hawai`i state court, after which McShane brought a separate lawsuit in state court seeking backpay for lost wages. Now in federal court, McShane alleges due process violations and breach of contract, both relating to his claim that he is entitled to backpay.

There are two motions before the Court. The Commission filed a Motion to Dismiss, ECF No. 21, and the City filed a Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment, ECF No. 22. Both parties filed joinders of simple agreement as to the other party's motion. ECF Nos. 25 & 27. For the reasons discussed below, the Court GRANTS the Commission's Motion to Dismiss and the City's associated Joinder, and GRANTS the City's Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment and the Commission's associated Joinder.

## BACKGROUND

Most of the facts in this case are not in dispute. Because the Court is deciding a motion to dismiss and motion for judgment on the pleadings, the facts are principally drawn from

the operative complaint and the evidentiary exhibits attached to the parties' concise statements of facts ("CSFs").[1/]

I. **The Honolulu Civil Service Commission**

The Honolulu Civil Service Commission is an administrative body (a merit appeals board) within the city government empowered to hear appeals of civil service employees. See Haw. Rev. Stat. ("HRS") § 76-47(a); see also Rev. City Charter City & Cnty. of Honolulu ("City Charter") §§ 6-1007, 6-1110 (am. 2017). Under the authorizing state statute and the Civil Service Rules, the Commission is empowered to hear four types of appeals:

(1) Recruitment and examination;
(2) Classification and reclassification of a particular position, including denial or loss of promotional opportunity or demotion due to reclassification of positions in a reorganization;
(3) Initial pricing of classes; and
(4) Other employment actions under this chapter, including disciplinary actions and adverse actions for failure to meet performance requirements, taken against civil service employees who are excluded from collective bargaining coverage under section 89-6.

HRS § 76-14(a); Civ. Serv. R., Ex. J to City's Mot., ECF No. 22-10, § 1-34. The statute and Civil Service Rules provide that "[a]ny civil service employee, who is suspended, discharged, or

---

[1/] As discussed below, the Court declines to construe the City's Motion as one for summary judgment. For that reason, the Court does not cite the parties' CSFs or documents that cannot be judicially noticed or incorporated by reference into the Complaint.

demoted . . . may appeal to the merit appeals board within twenty days after a final decision is made under the internal complaint procedures."  HRS § 76-47(e); see also Civ. Serv. R. § 1-35; Hoopai v. Civ. Serv. Comm'n, 106 Haw. 205, 208-10, 103 P.3d 365 (2004).  In the event a merit appeals board finds that the employment action is not substantiated, the state statute provides that it must reinstate the employee, without loss of pay:

> If the board finds that the reasons for the action are not substantiated in any material respect, the board shall order that the employee be reinstated in the employee's position, without loss of pay, but if the board finds that the reasons are substantiated or are only partially substantiated, the board shall sustain the action of the appointing authority, provided that the board may modify the action of the appointing authority if it finds the circumstances of the case so require and may thereupon order such disposition of the case as it may deem just.

HRS § 76-47(e); see also Civ. Serv. R. § 1-37.

In turn, the City Charter empowers the Commission to "reinstate [an] employee under such conditions as it deems proper."  City Charter § 6-1108(1)-(2).

The Civil Service Rules and the authorizing statute impose certain requirements before an employee can be deemed a "member" of the civil service.  See HRS § 76-27(a); Civ. Serv. R. § 3-2.  In relevant part, employees appointed to civil service positions are not "entitled to membership in civil

service until the employee has . . . [s]uccessfully completed the initial probation period . . . ."  HRS § 76-27(a); <u>see also</u> Civ. Serv. R. § 3-2.  Even if they are not technically regular civil service employees under the statute, probationary employees that are subject to certain disciplinary action may appeal to the Commission which may then grant relief if the action is "arbitrary, capricious or discriminatory in nature." Civ. Serv. R. § 12-6.

The Civil Service Rules provide for backpay in certain circumstances:

> **§ 8-10      Leave pending investigation**
>
> (a) An employee may be placed on a leave of absence with or without pay pending an investigation of charges that the employee may have committed a work-related offense and/or the employee's presence at the worksite is deemed to be detrimental to the proper conduct of the investigation or the operations of the workplace. Leave without pay under this section shall be in accordance with the following:
>
>> (1) The employee shall be given an opportunity to respond in writing or in person to the appointing authority or designee as to why the employee should not be placed on leave without pay pending investigation.
>>
>> (2) Notice of the proposed action must be given to the employee in writing and include the reasons for the proposed action, facts supporting the reasons, and the instructions for responding to the proposed action.
>
> (b) A leave of absence with or without pay pending investigation may be for a period of up to thirty calendar days, provided that for good cause and with the approval of the director, the leave of absence without pay may be extended.

(c) An employee who has been placed on a leave of absence without pay shall be reinstated without loss of pay and all rights and benefits will be restored as though the employee had not been on leave if the employee is cleared during the investigation or the charge is dropped or not substantiated. In the event the employee is partially cleared, a portion of the leave may be reinstated as appropriate.

Civ. Serv. R. § 8-10. The rule applies to "civil service employees," id. § 8-7, which means "an employee who has met all the requirements for regular civil service status," including completion of the initial probationary period, id. § 2-13.

Appeals to the Commission are conducted as "contested case[s]." Id. § 1-37(a). Both the authorizing statute and the Civil Service Rules provide for specific procedures and safeguards when an employee appeals to the Commission, including the right to be heard publicly, to present evidence and be represented by counsel, and the right to examine and cross-examine witnesses. Id. §§ 1-36, 1-37; HRS § 76-47(e).

## II. McShane's Employment with Department of Parks & Recreation, Leave Pending Investigation, & Termination

McShane began working as a groundskeeper for the City on July 24, 2017. Compl. ¶ 7; Pl. Opp. at 6; City Mot. at 2. As provided under the statute and Civil Service Rules described above, he began in an initial probation period. See HRS § 76-27(a); Civ. Serv. R. § 3-2; see also Pl. Opp. at 10. One week later, while still in the probationary period, McShane was notified that he was being placed on leave without pay for

disruptive behavior in the workplace.  Compl. ¶ 8; Pl. Opp. at 6.  McShane was then terminated effective August 28, 2017. Compl. ¶¶ 8-11; Pl. Opp. at 6; City Mot. at 2-3.

## III. Appeal to Commission & State Court Appeal

On October 20, 2017, McShane—acting pro se—appealed his termination to the Honolulu Civil Service Commission. Compl. ¶ 11; see also Ex. 1 to Pl. CSF, ECF No. 33-2.  In his petition of appeal, he framed his remedy requested as to be "reinstated and transfer[r]ed with justice."  Ex. 1 to Pl. CSF. The Commission held three hearings on McShane's case.  Compl. ¶ 12.

On November 27, 2018, the Commission issued Findings of Fact, Conclusions of Law, Decision and Order, Ex. 2 to Pl. CSF, ECF No. 33-3 (the "Commission's Order"), which found in McShane's favor.  Compl. ¶ 13.  The Commission reviewed the termination decision pursuant to its jurisdiction under the City Charter, the statute, and the Civil Service Rules.  See Comm'n Order at 4.  After rejecting the City's reasons for terminating McShane as "arbitrary, capricious or discriminatory in nature," the Commission imposed the following remedy:  "(1) [McShane] shall be reinstated to the Grounds Keeper position; (2) [McShane] shall be required to undergo a new initial probationary period for the position; (3) [McShane] shall be assigned to a workplace other than Ala Moana Regional Park; (4)

[McShane] shall be reinstated effective December 17, 2018; and

(5) on or before January 2, 2019 [the City] shall submit a

status report to the Commission setting forth the steps taken to

comply with the Commission decision." Comm'n Order at 3-5; see

also Compl. ¶ 13. Nowhere in the Commission's Order is backpay

or any award of lost wages addressed. See Comm'n Order; Compl.

¶ 13.

After it lost before the Commission, the City appealed

to the First Circuit Court for the State of Hawai`i. See Harold

P. McShane, III, et al. v. Dep't of Parks & Rec., City & Cnty.

of Honolulu, Civ. No. 18-1-1967-12; Ex. D to City Mot., ECF No.

22-4; Compl. ¶ 16. McShane, still pro se, filed an answer in

the appeal on March 20, 2019. See Ex. 5 to Pl. CSF, ECF No. 33-

6. In it, he framed the issue on appeal as, "did the

[Commission] correctly grant the appeal of Harold P. McShane,

III, for the reasons set forth in the decision." Id. at 2. He

also stated:

> My only requests after having endured all the
> turmoil I went through was [sic] to be
> transferred, with justice meaning being
> offered the same opportunities as the next
> person and to receive lost wages taken away
> from me, along with a Department Investigation
> of Ala Moana Beach's Management and their
> procedures when found to be a detriment to the
> City and County of Honolulu [Department of
> Parks & Recreation] should correct it, so that
> no one else in the future will have to go
> through the discrimination put upon me.

Id. at 7.

On July 12, 2019, the state court affirmed the Commission's Order without any additional findings. Ex. E to City CSF, ECF No. 22-5; Compl. ¶ 16. Judgment was entered in McShane's favor, resolving "all claims (raised by all parties) against all parties with prejudice in this . . . controversy." Ex. 7 to Pl. CSF, ECF No. 33-8, at 2 ("There are no remaining claims left unresolved and there are no remaining parties."); id. ("FINAL JUDGMENT, as to all claims (raised by all parties) against all parties is HEREBY ENTERED in favor of the Harold P. McShane, III (Pro Se Appellee), and Civil Service Commission, City and County of Honolulu (Agency-Appellee), and against Department of Parks & Recreation, City and County of Honolulu (Appellant).").

Neither party further appealed the state court's decision.

## IV. McShane's Additional Requests for Backpay

After the Commission's Order was issued but before the City appealed to the state court, McShane sent a letter to the Commission requesting "[a]s part of my request for justice I would like my loss [sic] wages paid to me." Ex. 3 to Pl. CSF, ECF No. 33-4; see also Compl. ¶ 14. Likewise, in June 2019—while the appeal was pending but before the state court had ruled—McShane again sent a letter to the Commission asking for

lost wages as part of his request for "justice." Ex. 6 to Pl.
CSF, ECF No. 33-7; Compl. ¶ 15.

## V.    Subsequent Lawsuits

### a. The Backpay Lawsuit

Just over one month after the Commission's Order was
affirmed in the state court appeal, McShane—still pro se at this
point—filed a "Claim for Relief" in a separate state-court
action (the backpay lawsuit). <u>Harold P. McShane, III v. Dep't
of Parks & Rec., City & Cnty. of Honolulu</u>, Civ. No. 19-1-1169-
07; Ex. 8 to Pl. CSF, ECF No. 33-9.  In it, McShane claimed he
was entitled to recover $56,809.50 for backpay in accordance
with Civil Service Rules § 8-10.  <u>See</u> Ex. 8 to Pl. CSF.  He
again used the same language, seeking "to be transferred, with
justice meaning . . . to receive lost wages taken away from me."
<u>Id.</u>

The state court treated the claim for relief as a
motion and held a hearing on October 28, 2019.  <u>See</u> Ex. G to
City CSF, ECF No. 22-7.  At this point, McShane had counsel
present.[2/]  <u>See</u> <u>id.</u>  Nonetheless, the claim—construed as a
motion—was denied.  <u>Id.</u>  Thereafter, the City moved for judgment
on the pleadings or summary judgment.  On March 30, 2021, the
state court issued an "Order Granting Defendant's Motion for

---

[2/]  The Court notes that McShane's counsel entered a special appearance
in the backpay lawsuit.  It does not appear that he had been engaged by
McShane at that point.

Judgment on the Pleadings, or in the Alternative, for Summary Judgment Without Prejudice," which noted that the motion was "granted without prejudice and without any findings of fact." Ex. 9 to Pl. CSF, ECF No. 33-10.

### b. The Federal Lawsuit

Meanwhile, McShane filed this lawsuit in federal court on May 27, 2020. Compl., ECF No. 1. It names both the City and the Commission as Defendants, and asserts claims for due process violations under the United States and Hawai`i constitutions and breach of contract, as well as a standalone claim for respondeat superior as against the City. Compl. ¶¶ 20-32.

On March 3, 2021, the Commission filed a Motion to Dismiss, ECF No. 21, and the City filed a Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment, ECF No. 22, along with a CSF, ECF No. 23.[3/] Both parties then filed joinders of simple agreement as to the other party's motion. ECF Nos. 25 & 27. McShane filed a single Opposition, ECF No. 34, and CSF in Opposition, ECF No. 33, on May 26. On June 2, the Commission filed a Reply, ECF No. 35, and the City filed a

---

[3/] The Court notes that the Commission's Motion is styled as a "Motion to Dismiss" yet it contains nine exhibits and is made pursuant to Federal Rule of Civil Procedure 56. Rule 56, of course, is the rule for summary judgment. See Mot. at 19. In any event, the Court need not convert the Motion into one for summary judgment nor consider any of the exhibits because, as discussed below, the Commission is entitled to quasi-judicial immunity. All this to say, the Court will not consider the exhibits attached to the Commission's Motion (many of which are duplicated in the other parties' filings anyway).

Reply, ECF No. 36, and a Reply CSF, ECF No. 37.  A hearing on the two Motions and Joinders was held on June 16.

**STANDARDS**

## I.    Rule 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) authorizes the court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988).

In resolving a Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff.  Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 783 (9th Cir. 2012).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Mere conclusory statements in a complaint or "formulaic recitation[s] of the elements of a cause of action" are not sufficient. Twombly, 550 U.S. at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929. Thus, the court discounts conclusory statements, which are not entitled to a presumption of truth, before determining whether a claim is plausible. Iqbal, 556 U.S. at 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Harris v. Cnty. of Orange, 682 F.3d 1126, 1131 (9th Cir. 2012) (quoting Eminence Cap., LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)).

## II. Rule 12(c): Judgment on the Pleadings

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is properly granted "when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Chavez v. United States, 683 F.3d 1102, 1108 (9th Cir. 2012) (quoting Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009)) (alteration omitted). Analysis under Rule 12(c) is substantially identical to analysis under Rule 12(b)(6) because, under both rules, a court must determine whether the

facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.  Id.; see also Harris, 682 F.3d at 1131 (explaining that Rule 12(b)(6) and Rule 12(c) motions are functionally equivalent).

When considering a motion for judgment on the pleadings, a court may consider material which is properly submitted as part of the complaint without converting the motion into a motion for summary judgment.  See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994), overruled on other grounds, Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002).  Where the documents are not physically attached to the complaint, they may be considered if the complaint refers to them and their "authenticity is not questioned."  Id.  Moreover, Federal Rule of Evidence 201 allows a court to take judicial notice of "matters of public record" without converting a motion to dismiss into a motion for summary judgment.  Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001) (quoting Mack v. S. Bay Beer Distrib., 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991)).  A court may not, however, take judicial notice of a fact that is subject to reasonable dispute.  Id.; see also Fed. R. Evid. 201(b).  Federal Rule of Civil Procedure 12(d) also provides that "[a]ll parties must be given a reasonable

opportunity to present all the material that is pertinent" to a
motion for judgment on the pleadings.

## **DISCUSSION**

This case raises several legal questions implicating
comity concerns and a federal court's authority to collaterally
review the findings and conclusions of a state court.  Carefully
keeping those considerations in mind, the Court ultimately
dismisses this case in its entirety.

First, the Court dismisses a withdrawn claim against
the Commission.  It then finds that the remaining due process
claim against the Commission must be dismissed with prejudice
because the Commission enjoys quasi-judicial immunity.  The
Court goes on to briefly address some of the other arguments
raised by the Commission but focuses primarily on the City's
arguments.  In that regard, the Court finds that (1) judicial
estoppel does not apply; (2) res judicata and collateral
estoppel do not bar this litigation; (3) McShane was not
deprived of his right to due process under the Fourteenth
Amendment; and (4) the respondeat superior claim against the
City is improper and fails to adequately allege municipal
liability.[4/]  Having then dismissed the federal constitutional

---

[4/]  The Court notes that neither Defendant raised the Rooker-Feldman
(Continued . . . )

claims that gave this Court federal-question jurisdiction under 28 U.S.C. § 1331, the Court uses its discretion to decline to exercise supplemental jurisdiction over the remaining state-law claims against the City, including the state constitutional claim and the breach-of-contract claim.

## I. Commission's Motion to Dismiss

### a. Withdrawn Claim – Breach of Contract Against the Commission

McShane's counsel agreed at the Rule 7.8 conference and the motions hearing that the breach-of-contract claim should not apply to the Commission because the Commission is not and never was McShane's employer. <u>See</u> Comm'n Mot. at 8. McShane thus agrees that claim should be dismissed against the Commission. Accordingly, the breach-of-contract claim as it

---

doctrine, which provides that federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments. <u>Dist. of Col. Ct. of Appeals v. Feldman</u>, 460 U.S. 462, 476, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); <u>Rooker v. Fid. Tr. Co.</u>, 263 U.S. 413, 416, 44 S. Ct. 149, 68 L. Ed. 362 (1923). The basic premise of that doctrine is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." <u>Noel v. Hall</u>, 341 F.3d 1148, 1154 (9th Cir. 2003). The scope of the doctrine includes de facto appeals from a state court decision and "any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." <u>Id.</u> at 1158. A claim is inextricably intertwined with a state court judgment if the federal claim can succeed only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling. <u>Doe & Assocs. Law Offices v. Napolitano</u>, 252 F.3d 1026, 1029 (9th Cir. 2001).

　　　Because neither party raised this, the Court does not conduct a deep analysis of the doctrine's applicability in these circumstances, other than to note that it typically requires that the plaintiff in the federal suit lost in the state court proceeding. Here, McShane prevailed in the state court appeal. That said, the Court navigates its res analysis below with caution not to in effect collaterally review the decisions of the state court.

applies to the Commission is hereby DISMISSED WITHOUT PREJUDICE.
See Fed. R. Civ. P. 41(a)(2) ("[A]n action may be dismissed at
the plaintiff's request only by court order, on terms that the
court considers proper.").

### b. Judicial Immunity

The Commission's primary argument for dismissal of the
Complaint against it is that it is entitled to quasi-judicial
immunity. Comm'n Mot. at 10-17. Despite being the most
compelling of the Commission's bases for dismissal, McShane does
not address immunity at all in his Opposition. See gen. Pl.
Opp.; see also Comm'n Reply at 2. At the hearing, he appeared
to object generally to the applicability of judicial immunity
but did not otherwise oppose dismissal of the Commission. At
any rate, the Court finds that the Commission is entitled to
quasi-judicial immunity insofar as McShane's claims take issue
with decisions and procedures adopted in the course of
adjudicating the administrative appeal.

"A long line of [the Supreme] Court's precedents
acknowledges that, generally, a judge is immune from a suit for
money damages." Mireles v. Waco, 502 U.S. 9, 9, 112 S. Ct. 286,
116 L. Ed. 9 (1991) (per curiam). Judges and those performing
judge-like functions are absolutely immune from damage liability
for acts performed in their official duties. Stump v.
Sparkman, 435 U.S. 349, 357-59, 98 S. Ct. 1099, 55 L. Ed. 2d 331

(1978).  This immunity extends to administrative law bodies and officers acting in a judicial or quasi-judicial capacity, functionally equivalent to that of a judge.  See Butz v. Economou, 438 U.S. 478, 511–513, 98 S. Ct. 2894, 57 L. Ed. 2d 895 (1978); Romano v. Bible, 169 F.3d 1182, 1186 (9th Cir. 1999); see also Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir. 2008) (explaining that judicial immunity extends to "other public officials who perform activities that are 'functionally comparable' to those of judges" (quoting Butz, 438 U.S. at 513, 98 S. Ct. 2894, 57 L. Ed. 2d 895)).  While broad in scope, judicial immunity is not without limitations.  A judge or administrative law body acting "in the clear absence of jurisdiction . . . would not be immune from liability for his action."  Mullis v. U.S. Bankr. Ct. for Dist. of Nev., 828 F.2d 1385, 1389 (9th Cir. 1987) (quoting Stump, 435 U.S. at 357 n.7, 98 S. Ct. 1099, 55 L. Ed. 2d 331).  For that exception to destroy immunity, there must be a "clear absence of all jurisdiction"; a judicial body acting merely "in excess of [its] jurisdiction" would retain immunity.  Id.  (citing Stump, 435 U.S. at 357 n.7, 98 S. Ct. 1099, 55 L. Ed. 2d 331).

Here, the Commission and its members were plainly acting in a judicial capacity when they adjudicated McShane's agency appeal.  The Commission held multiple hearings, considered the parties' arguments, and made factual findings and

legal conclusions—which, notably, were favorable to McShane.

See Wildey v. California, No. 07CV1154 JM (JMA), 2010 WL
1031211, at *11-12 (S.D. Cal. Mar. 19, 2010).  The Commission
adjudicates appeals from city employment decisions—which are by
their nature adverse—and treats the proceedings as "contested
case[s]."  Civ. Serv. R. § 1-37 (describing the Commission's
procedures for appeals, including conducting hearings,
considering motions, providing for witness subpoenas, and
submitting and review of testimony and other evidence); see also
HRS § 76-47 (setting out general procedures for hearings and
adjudication of employee appeals).  The Commission operates
using "structured formal procedures offering a[] [party] a fair
opportunity to be heard" and detailing "the remedial procedures
available to a [party] dissatisfied with the results of their
hearing."  Wildey, 2010 WL 1031211 at *11-12; see also HRS § 76-
47(e) ("Any civil service employee, who is suspended,
discharged, or demoted and who is not included in an appropriate
bargaining unit under section 89-6, may appeal to the merit
appeals board within twenty days after a final decision is made
under the internal complaint procedures.").  The Commission
therefore constitutes an administrative law body acting in a
judicial or quasi-judicial capacity, and it is thus entitled to
immunity.

Moreover, while not exactly clear given that McShane prevailed before the Commission, it appears that his claims directed at the Commission in this Court are based exclusively on the actions of the Commission in deciding to not award backpay or ignoring his requests for backpay.  It is well settled that "[t]he scope of judicial immunity is broad and a judge will not be deprived of immunity even if the action taken was in error, was done maliciously, or was in excess of his authority."  Wildey, 2010 WL 1031211 at *11–12 (citing Stump, 435 U.S. at 355–56, 98 S. Ct. 1099, 55 L. Ed. 2d 331).  And because there is no dispute that the Commission had jurisdiction over McShane's appeal, there is no argument that the "clear absence of all jurisdiction" exception would apply.  See Mullis, 828 F.2d at 1389.

Accordingly, the Court finds that the Commission and its members are entitled to immunity and McShane is barred from pursuing his claims for monetary relief against the Commission.  The Commission's Motion to Dismiss is thus GRANTED insofar as it argues entitlement to quasi-judicial immunity from the claims for monetary damages.  Because no amendment could overcome the immunity problem, to the extent that the due process claim

against the Commission seeks monetary relief, it is dismissed
WITH PREJUDICE.[5/]

### c. Judicial Estoppel

Although the Commission is immune from liability, the
Court briefly explores the Commission's additional argument that
McShane is judicially estopped from collaterally attacking the
final judgment in the state court appeal.  The Court finds that
this case is not an appropriate one for the application of
judicial estoppel.

"[W]here a party assumes a certain position in a legal
proceeding, and succeeds in maintaining that position, he may
not thereafter, simply because his interests have changed,
assume a contrary position, especially if it be to the prejudice
of the party who has acquiesced in the position formerly taken
by him."  New Hampshire v. Maine, 532 U.S. 742, 748, 121 S. Ct.
1808, 149 L. Ed. 2d 968 (2001) (citation omitted).  This is
known as the doctrine of judicial estoppel.  A party is estopped
from asserting a contrary position "to protect the integrity of
the judicial process."  Id. (citation omitted); see also Russell

---

[5/]  In addition to monetary damages—which are barred by judicial
immunity as against the Commission—the Complaint also seeks injunctive and
declaratory relief.  To the extent that the federal due process claim against
the Commission seeks the latter, the Court finds that the Complaint fails to
state a plausible claim for relief.  Section 1983 (the vehicle for bringing a
direct action for constitutional violations) does not allow for injunctive
relief.  See Gillaspy v. Fielding, No. CV102128DSFPJWX, 2010 WL 11549722, at
*2 (C.D. Cal. July 16, 2010), aff'd, 472 F. App'x 665 (9th Cir. 2012).  With
respect to the state constitutional due process claim against the Commission,
the Court below dismisses that claim for lack of supplemental jurisdiction.

v. Rolfs, 893 F.2d 1033, 1037-38 (9th Cir. 1990).  The doctrine
not only bars a litigant from making inconsistent positions in
the same litigation, but also bars making incompatible
statements in two different cases.  Hamilton v. State Farm Fire
& Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001).

        To decide whether to invoke judicial estoppel courts
consider (1) whether the party's new assertion is "clearly
inconsistent" with its earlier position, (2) whether the party
was successful in persuading the earlier court to follow his
first position (such that the finding of the earlier court would
now be incorrect and one court or the other appears to be misled
in a finding), and (3) whether the party asserting inconsistent
positions would derive an unfair advantage or impose an unfair
detriment if not estopped.  New Hampshire, 532 U.S. at 750, 121
S. Ct. 1808, 149 L. Ed. 2d 968.  Because this is an equitable
doctrine invoked by the court at its discretion, these factors
are not inflexible, and there may be other factors the court
should consider.  Id.  That said, the Ninth Circuit "has
restricted the application of judicial estoppel to cases where
the court relied on, or 'accepted,' the party's previous
inconsistent position."  Hamilton, 270 F.3d at 783 (citation
omitted).  Likewise, judicial estoppel requires "a knowing
antecedent misrepresentation by the person or party alleged to
be estopped."  Wyler Summit P'ship v. Turner Broad. Sys., Inc.,

235 F.3d 1184, 1190 (9th Cir. 2000); <u>see also</u> <u>Johnson v. State</u> <u>of Oregon</u>, 141 F.3d 1361, 1369 (9th Cir. 1998) ("Judicial estoppel applies when a party's position is tantamount to a knowing misrepresentation to or even fraud on the court." (citation and internal quotation marks omitted)).  "Judicial estoppel seeks to prevent the deliberate manipulation of the courts; it is inappropriate, therefore, when a party's prior position was based on inadvertence or mistake."  <u>Helfand v.</u> <u>Gerson</u>, 105 F.3d 530, 536 (9th Cir. 1997) (collecting cases).

This case is not a strong candidate for judicial estoppel.  First, McShane's position is not clearly inconsistent with or contrary to the position he took in the administrative proceedings and the state court appeal.  <u>See, e.g.</u>, <u>Pauma Band</u> <u>of Luiseno Mission Indians of the Pauma & Yuima Rsrv. v. State</u> <u>of Calif.</u>, No. 3:09-CV-1955-CAB-MDD, 2014 WL 12570173, at *3 (S.D. Cal. June 6, 2014) (discussing how two arguments were plainly inconsistent and incompatible).  In those proceedings, McShane argued that he was wrongfully terminated and entitled to reinstatement, and the Commission and then state court so found. Now he argues that he should recover backpay.  Regardless of whether he could or should have raised this argument in earlier proceedings, his position now is not "clearly inconsistent" with the arguments he did make (that he should be reinstated).

Turning to the second factor, McShane was not successful in getting the state court or the Commission to make any express finding as to his entitlement to backpay.  To the contrary, it is never addressed in any of the relevant orders. So even assuming arguendo that this Court accepted and adopted McShane's argument that he is or was legally entitled to backpay or additional procedures, doing so would not necessarily make the earlier proceedings "incorrect" or imply that this Court, the Commission, or the state court was "misled."

As to the third and final factor, the City has not identified any unfair advantage or unfair detriment if McShane is not estopped from arguing his entitlement to backpay.

More generally, the fact that McShane did not unequivocally raise the backpay remedy before the Commission or the state court (which he did in the latter) was certainly not a "knowing" misrepresentation, let alone a "fraud on the court." See Johnson, 141 F.3d at 1369; see also Helfand, 105 F.3d at 535.  Judicial estoppel is appropriate "when a litigant is permitted to gain an advantage by the manipulative assertion of inconsistent positions."  Helfand, 105 F.3d at 535.  No fair interpretation of the circumstances in this case would lead to the conclusion that McShane is acting manipulatively or in bad faith in order to gain some unfair advantage.  At worst, he misunderstood his ability or obligation to clearly seek backpay

before the Commission and the state court.  See  Lowdermilk v.
U.S. Bank Nat'l Ass'n, 479 F.3d 994, 1002-03 (9th Cir. 2007)
("Although judicial estoppel may be available should a plaintiff
proceed in bad faith, there are cases—as the instant case
proves—in which the plaintiff[] cannot anticipate from the
outset the value of the[] case.") (internal citation omitted),
overruled on other grounds recognized in, Rodriguez v. AT & T
Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013).

        For those reasons, and especially given that McShane
was—until recently—representing himself and navigating complex
government procedures, the Court finds that this is not an
appropriate case for the application of judicial estoppel.

## II.  The City's Motion for Judgment on the Pleadings or in the Alternative for Summary Judgment

        The Court declines to construe the City's Motion as
one for summary judgment.  Thus, under Rule 12(c), the Court
considers only the pleadings, as well as material properly
submitted by both parties where the material's authenticity is
not contested and the Complaint necessarily relies on such
material.  See Point Ruston, LLC v. Pac. N.W. Reg'l Council of
the United Brotherhood of Carpenters & Joiners of Am., 658 F.
Supp. 2d 1266, 1273-74, 1280 (W.D. Wash. 2009).  The vast
majority of the factual "evidence" in this case comes from
judicial proceedings, so the Court takes judicial notice of

those public records.  See id. at 1274.  None of the facts
established by these documents is subject to reasonable dispute,
and none of the parties objected to authenticity when the Court
raised it at the hearing.  See Fed. R. Evid. 201(b).  Moreover,
the parties had adequate opportunity to present the pertinent
material and indeed submitted numerous exhibits with their
filings.

### a. Res Judicata

Having now dismissed the claims against the
Commission, the Court turns to the City's arguments.  The City
argues that McShane is barred from litigating his claims based
on the doctrine of res judicata.  The City asks the Court to
find that the claims and issues raised in this case were
litigated to finality in the two prior cases in state court.  As
discussed below, the Court finds that neither claim nor issue
preclusion bars this lawsuit.

### i. Legal Framework

Generally, the doctrine of res judicata prevents
parties from relitigating claims or issues that have already
been decided by a competent tribunal.  Santos v. State of
Hawaii, 64 Haw. 648, 652, 646 P.2d 962 (1982); Matter of Herbert
M. Dowsett Tr., 7 Haw. App. 640, 643–46, 791 P.2d 398 (Ct. App.
1990).  It protects the integrity of the courts and promotes
reliance upon judicial pronouncements by requiring that the

decisions and findings of the courts be accepted as undeniable legal truths.  Pedrina v. Chun, 906 F. Supp. 1377, 1398 (D. Haw. 1995), aff'd, 97 F.3d 1296 (9th Cir. 1996).  Res judicata furthers the finality of legal disputes and eliminates the time and expense of relitigation by requiring that parties bring all claims arising out of a transaction, or series of connected transactions, in one action.  Id.

In the federal courts, the doctrine of "res judicata" arises from the Full Faith and Credit Clause of the U.S. Constitution.  The statute implementing the Full Faith and Credit Clause requires that federal courts give state court proceedings "the same full faith and credit . . . as they have by law or usage in the courts of such State . . . from which they are taken."  28 U.S.C. § 1738; see also Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 80, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984); Robi v. Five Platters, Inc., 838 F.2d 318, 322 (9th Cir. 1988).  To determine whether a state decision precludes a party from litigating a claim or issue, federal courts must apply the res judicata rules of the state court in which the prior judgment was rendered.  Migra, 465 U.S. at 81, 104 S. Ct. 892, 79 L. Ed. 2d 56; Robi, 838 F.2d at 322.  The preclusive effect of a federal-court judgment, on the other hand, is typically "determined by federal common law."  Taylor v. Sturgell, 553 U.S. 880, 891, 128 S. Ct. 2161, 171 L. Ed. 2d

155 (2008).  Here, the City asserts that McShane's claims are precluded by the two Hawai`i state court actions.  This Court must therefore apply Hawai`i's res judicata rules to determine the preclusive effect of those judgments.

Under Hawai`i law, res judicata encompasses two distinct types of preclusion—claim preclusion and issue preclusion.  Santos, 64 Haw. at 652, 646 P.2d 962; Dowsett, 7 Haw. App. at 644, 791 P.2d 398.  Claim preclusion exists when a judgment "of a court of competent jurisdiction" bars a separate action in any court "between the same parties or their privies" involving the same subject matter, and "precludes the relitigation not only of the [claims] which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided."  Dowsett, 7 Haw. App. at 644, 791 P.2d 398 (quoting In re Bishop Estate, 36 Haw. 403, 416 (1943)).  Claim preclusion thus bars plaintiffs from pursuing successive suits where the claim was either litigated or could have been litigated in the first action.  See id.  It also bars defendants from pursuing a subsequent action that could have been raised as a defense or counterclaim in the first suit.  See id.  By contrast, issue preclusion only bars relitigation of particular issues actually litigated and decided in the prior suit.  Id.

### ii. Claim Preclusion

Claim preclusion has three elements: (1) the claim or cause of action asserted in the present action was or could have been asserted in the prior action; (2) the parties in the present action are identical to, or in privity with, the parties in the prior action; and (3) a final judgment on the merits was rendered in the prior action. Santos, 64 Haw. at 653, 646 P.2d 962; Smallwood v. City and Cnty. of Honolulu, 118 Haw. 139, 185 P.3d 887, 894 (Ct. App. 2008). If any of these elements are not met, claim preclusion cannot apply.

### 1. Final Judgment on the Merits

The Court begins its analysis with the third prong because doing so allows it to focus on the nature of the claim or action the City says is preclusive. This prong addresses whether there was a final judgment on the merits. Under Hawai`i law, dismissal with prejudice is an adjudication on the merits of all issues that were raised or could have been raised in the pleadings. Land v. Highway Constr. Co., 64 Haw. 545, 551, 645 P.2d 295 (1982); see also Haw. R. Civ. P. Rule 41(b); Pedrina, 906 F. Supp. at 1401. A dismissal without prejudice, on the other hand, is not an adjudication on the merits for purposes of res judicata. Land, 64 Haw. at 551, 645 P.2d 295. A judgment is considered final for purposes of res judicata when the time to appeal has expired without an appeal being taken. Butler v.

Cnty. of Maui, Civ. No. 13-00163 SOM/KSC, 2013 WL 4605422, at *7 (D. Haw. Aug. 29, 2013) (citing Glover v. Fong, 42 Haw. 560 (1958)).

As noted, there are two state-court judgments which—in the City's view—bar McShane's lawsuit in this Court:  the state court appeal and the backpay lawsuit.  The latter cannot have preclusive effect because the City's motion for judgment on the pleadings or in the alternative for summary judgment was granted "without prejudice and without any findings of fact."  See Ex. 9 to Pl. CSF.  There is thus no final judgment on the merits in the backpay lawsuit.  As to the state court appeal, there is a final judgment on the merits.  The state court affirmed the Commission's Order by dismissing "all claims (raised by all parties) against all parties with prejudice," Ex. E to City's Mot., and the time to appeal has expired without any being taken, see Haw. R. App. P. 4(a)(1).

In sum, there is one final judgment on the merits for purposes of res judicata:  the state court appeal.  For the remainder of its analysis, the Court need only consider the possible preclusive effect of that action.

## 2. Same Parties

There is no dispute that the relevant parties to this action (the City and McShane) are the same as the parties to the

first action.  Accordingly, the first element of claim
preclusion is satisfied.

### 3. Same Claim

        "Res judicata prohibits the relitigation of all
grounds and defenses which might have been properly litigated in
the prior action, even if the issues were not litigated or
decided in the earlier adjudication of the subject claim or
cause of action."  Smallwood, 118 Haw. at 147, 185 P.3d 887.
Although what constitutes the same claim for purposes of claim
preclusion is broad, and this is a close case, the Court finds
that this case raises different claims.  At the outset, the
Court notes that McShane appears to admit that backpay could
have been raised as a remedy before the Commission and that he
indeed did raise it in the state court appeal.  In a normal case
that might lead to a finding of claim preclusion.  But this is
not a normal case, and the Court is reluctant to dismiss
McShane's case on claim preclusion grounds where he may have
been entitled, after he was reinstated, to then pursue backpay
through other state procedures—for example by filing a wage
claim, applying for a writ of mandamus, or suing for breach of
contract.[6]  Indeed, reinstatement itself would presumably—under
normal tenets of employment law—entitle a wrongfully terminated

---

        [6]  The Court further explores these options below in discussing the due
process claim.

employee to collect backpay.  See Lane v. City of Pickerington,
No. 2:11-CV-0966, 2015 WL 5244462, at *10 (S.D. Ohio Sept. 9,
2015) ("[I]f the termination was unjustified, then damages may
include an award for lost wages."); GP Roadway Sols., Inc. v.
Laborers Int'l Union of N. Am. Loc. 368, No. CIV. 13-00282 JMS,
2014 WL 3737048, at *7-8 (D. Haw. July 29, 2014) (collecting
cases that describe backpay as a remedy for making a wronged
employee "whole").  Moreover, as discussed further below, this
case is not a request to find that the Commission erred in not
granting backpay—which would be outside this Court's
jurisdiction; it is instead about whether McShane was deprived
of a liberty or property interest without due process.  See
Lane, 2015 WL 5244462 at *11 (adjudicating a procedural due
process claim seeking damages in the form of lost wages because
there had been no "final decision on the merits concerning
[plaintiff]'s claim for lost wages due to the violation of his
procedural due process rights").

        Turning now to comparing the causes of action in this
case to the ones adjudicated in the state court appeal, these
are different cases.  The state court appeal was an agency
appeal involving judicial review of the Commission's Order
reinstating McShane.  This case involves two causes of action:
due process and breach of contract.  In part, this case is a
constitutional challenge to the Commission and the City's

procedures surrounding McShane's inability to collect backpay

upon reinstatement from a wrongful termination.  The City

maintains that such a constitutional challenge falls within the

broad "same claims" analysis because it is simply a different

theory, remedy, or ground for recovery.  That position overlooks

a key distinction here.  McShane's claim in this case is in

essence a claim for violations of his procedural due process

rights insofar as there was inadequate process for collecting

his lost wages upon reinstatement.  See Lane, 2015 WL 5244462 at

*11–12.  It is not a due process challenge to the City's

termination procedures or even to the Commission's procedures

adjudicating his appeal of his termination.  See Ellis v.

Sheahan, 412 F.3d 754, 757 (7th Cir. 2005) (explaining that

plaintiff was not "complaining that she was suspended from her

job without due process"; instead, the "deprivation of which she

complained occurred when, in reaction to the Merit Board's

curtailment of the suspension, the [city] refused to give her

backpay" for a portion of the suspension).  There is authority

to suggest that due process claims regarding the adequacy of the

termination procedures would be barred by claim preclusion.

See, e.g., Quade v. Ariz. Bd. of Regents, 700 F. App'x 623, 626

(9th Cir. 2017) (finding that plaintiff's decision not to appeal

from employee's final decision or take steps to have decision

corrected through rehearing barred subsequent due process claim

that university decision or process was unfair); Moore v. Grundmann, No. 11CV1570-GPC-JLB, 2014 WL 6906174, at *8 (S.D. Cal. Dec. 8, 2014) ("The Court concludes that any due process claim by Plaintiff regarding the adequacy of procedures at his termination is barred by res judicata." (emphasis added)), aff'd, 671 F. App'x 686 (9th Cir. 2016).

Here, however, McShane is not raising a due process challenge to the procedures regarding the lawfulness of McShane's termination—which was adjudicated to finality in McShane's favor in the state court appeal and plainly could have been raised before the state court or on appeal therefrom. This case involves something slightly different—a due process challenge based on the City's denial of backpay for lost wages he claims he was entitled to following his reinstatement. Compare Ellis, 412 F.3d at 757 ("The plaintiff's claim for backpay didn't arise until the status quo was restored . . . .") and Ass'n for L.A. Deputy Sheriffs v. Cnty. of L.A., 648 F.3d 986, 992 n.5 (9th Cir. 2011) (finding that claim preclusion did not bar federal lawsuit challenging the constitutionality of the commission's procedures as lacking adequate safeguards), with Miller v. Cnty. of Santa Cruz, 39 F.3d 1030, 1038 (9th Cir. 1994) (holding that an unreviewed commission decision upholding employee's termination barred subsequent federal constitutional claims, but implying that an employee who has had his

termination overturned could file a subsequent lawsuit for damages arising therefrom).  Looking at the matters litigated before the Commission and then affirmed in the state court appeal, there was no determination regarding the propriety of a backpay award for the violation of McShane's due process rights or for breach of contract.  See Lane, 2015 WL 5244462 at *11-12.

For those reasons, the Court holds that claim preclusion does not bar the Complaint against the City in this case.

### iii.  Issue Preclusion

Issue preclusion is even more narrowly applied than claim preclusion.  It has four elements:  (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties to the present action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment.  Smallwood, 118 Haw. at 147, 185 P.3d 887.

As discussed above for claim preclusion, both the second and third elements are satisfied here as to the state court appeal.  There is a final judgment in state court affirming the Commission's decision, and McShane and the City

were parties to that action.  Focusing on the first and fourth
elements, then, the Court must determine whether the issues
presented in this lawsuit are identical to issues litigated and
decided in the first state court action.  They are not.

Unlike claim preclusion, issue preclusion does not bar
litigation of issues that were or could have been asserted.  It
only prevents a party from relitigating an issue which was
actually raised, litigated, and decided in the prior action.
Dowsett, 7 Haw. App. at 640, 791 P.2d 398.  Hawai`i courts have
generally interpreted "actually litigated" as requiring that the
party against whom preclusion is sought had a "full and fair
opportunity" to litigate the issue in the earlier case.  Morneau
v. Stark Enters., Ltd., 56 Haw. 420, 422-23, 539 P.2d 472
(1975).

Here, the state court appeal affirmed the decision of
the Commission in a two-page order.  Ex. E to City's Mot.  It is
also undisputed that McShane did not explicitly raise the
backpay issue before the Commission, so the Commission's order
is devoid of any discussion of backpay or lost wages.  See Ex. C
to City's Mot., ECF No. 22-3.  And while McShane—somewhat
clumsily—raised the issue of recovering lost wages in the state
court appeal, Ex. 5 to Pl. CSF, there is otherwise no evidence
that the issue was actually litigated and decided by the state
court.

As the party seeking to apply issue preclusion, it is the City's burden to show that it applies.  The City has not provided any evidence that the issue of McShane's entitlement to backpay was actually litigated in the state-court appeal or in the underlying agency proceedings.[7/]  It argues only that McShane has already litigated "[the City]'s termination of his employment."  City Mot. at 13.  Whether a termination was wrongful is not an issue <u>identical</u> to whether a terminated employee has a claim for backpay.  Nor is a finding on the latter essential to a finding on the former (although the reverse might be true).

In any event, issue preclusion only bars relitigation of issues "actually raised, litigated, and decided" in the prior action.  Here, the issue was not actually litigated or decided before the Commission or in the state court appeal.  Accordingly, the Court finds that issue preclusion does not apply.

### b. Federal Constitutional Claims

The Court now turns to McShane's federal constitutional claims asserted against the City.  As discussed

---

[7/]  The Court notes that the City's Motion states that the issue of backpay was litigated in the backpay lawsuit.  <u>See</u> City Mot. at 13.  The Court need not decide whether the backpay issue was actually litigated in that case because, as discussed earlier, there is no final judgment on the merits.

below, the Court will grant the City's Motion as to the due process and respondeat superior claims.

### i. **Due Process Under the Fourteenth Amendment (Count I)**

Count I of the Complaint asserts due process violations under the Fourteenth Amendment to the U.S. Constitution.[8/]  It alleges that Defendants "committed nonfeasance and/or misfeasance when each ignored [McShane's] written requests and failed to award him back pay as the result of his termination being overturned."  Compl. ¶ 22.  McShane alleges that Defendants "nonfeasance and/or misfeasance denied him back pay to which he was entitled under Section 8-10 of the [Civil Service Rules]."  Compl. ¶ 23.  McShane's due process theory is that he was "denied due process of law and deprived of

_____

[8/]  Count I also asserts a due process claim under Article I, Section 5 of the Hawai`i State Constitution.  As indicated, the Court first addresses only the Fourteenth Amendment claim and makes no findings on the state-constitution due process claim.  The Court does note, however, that it is unclear whether Hawai`i recognizes a private cause of action for damages for a violation of rights guaranteed under the Hawai`i State Constitution.  See David v. Bhanot, Civ. No. 20-00002 JMS-WRP, 2020 WL 3803881, at *2 n.3 (D. Haw. July 7, 2020) (citing Pitts v. Tuitama, Civ. No. 17-00137 JMS-KMC, 2017 WL 3880653, at *8 n.12 (D. Haw. Sept. 5, 2017)); see also Figueroa v. State, 61 Haw. 369, 604 P.2d 1198 (1979).  It is not necessary to decide that important question of state law because the Court will ultimately decline to exercise supplemental jurisdiction over the state constitutional claim.

property without any sufficient, just, or reasonable cause."[9/] Compl. ¶ 24.

The due process clause of the U.S. Constitution provides that a person may not be deprived of "life, liberty, or property without due process of law." U.S. Const., amend. XIV § 1. To succeed on a procedural due process claim, "the plaintiff must establish the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." Shanks v. Dressel, 540 F.3d 1082, 1090 (9th Cir. 2008) (quoting Portman v. Cnty. of Santa Clara, 995 F.3d 898, 904 (9th Cir. 1993)) (internal quotation marks omitted). Fundamentally, procedural due process requires "some kind of notice" and "some kind of hearing" before the State can deprive a person of life, liberty, or property. Zinermon v. Burch, 494 U.S. 113, 127-28, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). While the concepts of property and liberty are broad, procedural due process does not guarantee individuals the right to a hearing for every government deprivation. See Roth, 408 U.S. at 569-70, 92 S. Ct. 2701. "[T]he range of interests protected by procedural due

---

[9/] There is one procedural matter the Court must address at the outset. The Complaint fails to assert the federal due process claim through 42 U.S.C. § 1983. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) (explaining that there is no direct cause of action under the U.S. Constitution and a plaintiff must use 42 U.S.C. § 1983). Because that is easily fixable by amendment, the Court proceeds with analyzing the due process claim on the merits to determine whether amendment would be futile.

process is not infinite." Id.  State law determines

the property interest in question but federal law determines

whether the taking of that interest is a violation

of due process.  See Logan v. Zimmerman Brush Co., 455 U.S. 422,

432, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1992).

While McShane does not clearly identify the liberty or

property interest underlying his due process claim, the Court

can infer that he asserts such an interest in his right to

continued employment or his right to wages owed, which he

suggests stems from Civil Service Rules § 8-10.  For purposes of

this analysis, the Court assumes without deciding that the

withholding of wages purportedly owed to McShane affects a

liberty or property interest.[10/]  See Haw. Gov't Emps.' Ass'n,

AFSCME Loc. 152 v. Pub. Emps. Comp. Appeals Bd. of State of

Haw., 10 Haw. App. 99, 109, 861 P.2d 747 (Ct. App. 1993) ("[T]he

supreme court has noted that wages are property subject to the

protection of the due process clause (citing Kekoa v. Supreme

Court of Haw., 55 Haw. 104, 108, 516 P.2d 1239 (1973))); see,

---

[10/]  The Court understands that it is the City's position that McShane had no property or liberty interest in his job because he was still in an initial probationary period, and thus an at-will employee who could be discharged without cause.  It is true that a probationary employee does not have a property interest in continued employment.  Ignacio v. Cnty. of Haw., 937 F. Supp. 2d 1220, 1237 (D. Haw. 2013) (collecting cases).  But putting that aside, McShane could have some property interest in wages to which he was legally entitled under applicable statutes or rules.  And while the parties debate the proper reading of HRS § 76-47(e) and the Civil Service Rules as they apply to probationary employees, the Court need not reconcile those thorny interpretive questions of state and local rules because it is satisfied that, regardless of the interest at stake, McShane received all the process that was due.

e.g. <u>Lujan v. G & G Fire Sprinklers, Inc.</u>, 532 U.S. 189, 195, 121 S. Ct. 1446, 149 L. Ed. 2d 391 (2001) (finding that a party had a property interest in its claim for payment of withheld money owed under its contracts); <u>Sanem v. Smith</u>, No. CV 19-6-M-DLC-KLD, 2020 WL 2477641, at *5 (D. Mont. Jan. 29, 2020) ("For purposes of discussing [plaintiff]'s due process claims, the Court will assume that he has a protectable property interest in his wages."), <u>report and recommendation adopted</u>, No. CV 19-6-M-DLC-KLD, 2020 WL 1527863 (D. Mont. Mar. 31, 2020); <u>Flory v. Mays</u>, No. 06 C 3523, 2007 WL 4232781, at *9 (N.D. Ill. Nov. 26, 2007) (finding that due process was satisfied "[e]ven assuming plaintiff had a property interest in backpay that is entitled to due process protections").  Thus, the only question is whether McShane received sufficient process.  <u>See</u> <u>Belnap v. Chang</u>, 707 F.2d 1100, 1102 (9th Cir. 1983).

The Court finds that McShane had sufficient process. As outlined below, McShane had myriad procedures available to him to challenge any deprivation.

First, the City has a robust civil service appeal process.  That procedure does not violate due process, even if an employee errs in navigating it or is unhappy with the result. <u>See</u> <u>Belnap</u>, 707 F.2d at 1103-04 (holding that the State's civil service appeals process did not violate due process); <u>Stephens v. Postmaster Gen.</u>, 623 F.2d 594, 595-96 (9th Cir. 1980)

(affirming district court's dismissal of a due process claim against the Postmaster General where the discharged postal worker's appeal was rejected as untimely); see also Flory, 2007 WL 4232781 at *5-6 (finding no due process violation even where the employee had tried several times in the administrative appeal to get a ruling on her request for backpay, but was unsuccessful).  McShane engaged with that process by filing internal grievances surrounding his termination, by appealing his termination to the Commission, and by participating in extensive proceedings before the Commission and the state court. He has not identified any specific infirmities with Honolulu's civil service scheme, as authorized by state law.  That he did not get the precise remedy he thinks he is entitled to does not indicate that the process itself was inadequate.

Moreover, to the extent that McShane is arguing that he was denied the opportunity to seek backpay in a pre- or post-deprivation grievance procedure once he was reinstated, that is not an appropriate basis for a due process violation.  See Flory, 2007 WL 4232781 at *7.  First, if he is seeking a separate predeprivation process for backpay upon reinstatement, the Court has trouble envisioning how that would work.  See Ellis, 412 F.3d at 758 (noting its "difficulty understanding what predeprivation process [plaintiff] envisages" if the deprivation was the employer refusing, "upon [plaintiff]'s

reinstatement, to give her all the backpay she wanted"). If McShane is suggesting a predeprivation hearing to challenge the City's policy on backpay, "[t]hat would have been a futility." Id. (holding that predeprivation hearing to challenge sheriff's policy on backpay would have been a "futility" as due process was satisfied by other legal remedies).

And anyway, McShane had other adequate procedures available to him that satisfy constitutional due process. See Flory, 2007 WL 4232781 at *9 ("Even assuming plaintiff has a property interest in backpay that is entitled to due process protections, adequate procedures are or were available to satisfy constitutional due process."). If—as the City contends—McShane's right to seek backpay would have arisen with his termination proceedings such that it could be raised before the Commission, then due process is satisfied by the fact that McShane could (and indeed did) pursue backpay before the Commission or on appeal. If—as McShane implies—his right to backpay arose only after he was reinstated when his termination was found to be wrongful, due process is satisfied in that McShane could have pursued backpay through other legal processes. For example, the Court does not see why he could not have brought a claim for backpay under Hawai`i's wage payment statute, an application for a writ of mandamus compelling payment, or—indeed, as he has done here—a breach-of-contract

action.  See HRS § 388-1 (defining "wages"); id. § 388-11(a)

(providing a right of action for employees to recover unpaid

wages in "any court of competent jurisdiction"); e.g., Ellis,

412 F.3d at 757 ("Unless the statute of limitations has run,

[plaintiff] can still obtain the missing backpay, if she has any

right to it, by a suit under the Illinois wage payment statute,

. . . or by an action for mandamus." (internal citations

omitted)); Flory, 2007 WL 4232781 at *9 ("Even if the Department

previously refused and would continue to refuse to permit

plaintiff to seek backpay through the grievance procedure, post-

deprivation due process is satisfied by the fact that plaintiff

can pursue backpay under Illinois's wage payment statute, . .

. or pursuant to a breach of contract action in state court"

(citing Dunn v. Cnty. of Erie, No. 92-CV-0511E(M), 1993 WL

499694, at *3 n.3 (W.D.N.Y. Nov. 24, 1993))); cf. Miller, 39

F.3d at 1038 (implying that a discharged employee whose

termination is overturned by the civil service commission could

subsequently "fil[e] a suit for damages on claims arising out of

the termination").

        The Court makes no findings on whether those

mechanisms would lead to meritorious outcomes, but those many

procedures available to McShane show that his procedural due

process claim is without merit.  See Ellis, 412 F.3d at 758

(rejecting plaintiff's procedural due process claim for backpay

in part because what plaintiff "needed and got was the right to seek relief against [the employment] action, and she had that by virtue of the [state's wage statute and other mandamus relief]").

What is more, if McShane believed that the Commission's ruling, as affirmed by the state court, was so inadequate or erroneous as to not provide him with backpay as a remedy, he could well have appealed the circuit court's decision to the Intermediate Court of Appeals. That he chose not to take advantage of that and other options does not mean he was deprived of due process. See Lujan, 532 U.S. at 195, 121 S. Ct. 1446, 149 L. Ed. 2d 391 ("Because we believe that California law affords respondent sufficient opportunity to pursue that claim in state court, we conclude that the California statutory scheme does not deprive G & G of its claim for payment without due process of law."); Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir. 1982) ("[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.").

In sum, the municipal civil service procedures and Hawai`i statutory and common law afforded McShane sufficient opportunity to pursue a claim for backpay. The Court finds that McShane was not deprived of any protected property or liberty

interest without due process.  The Commission's appeals process and the state court's review thereof, as well as other statutory or common-law remedies under state law, afforded McShane all the process he was due.

For those many reasons, McShane was not deprived of his liberty or property interests without due process of law. Because the Court cannot conceive of—and McShane has not explained—how any amendment to the Complaint that would overcome the legal shortcomings described above, the Court will not grant leave to amend.  It will, however, dismiss the due process claim against the City WITHOUT PREJUDICE.

### ii. Respondeat Superior (Count III)

Count III is incorrectly pleaded as a standalone cause of action for respondeat superior against the City.[11/]  It appears to primarily flow from the due process claim alleged in Count I:

> [The City] maintained and continues to maintain a policy, practice, and/or usage of failing and refusing to reimburse employees for lost earnings when it has been determined that the employees were terminated without sufficient cause or justification in violation of rights guaranteed to Plaintiff by the Fourteenth Amendment to the United States Constitution and Article I, Section 5 of the Constitution of the State of Hawaii, inter alia[.]

---

[11/]  The Court notes that the Complaint erroneously refers to the respondeat superior claim as Count XI.  See Compl. at 6.  The Court refers to it as "Count III" throughout this Order.

Compl. ¶ 32.  The City ignores this claim in its Motion, and McShane does not address it in his Opposition either.[12/]

In any event, respondeat superior is a theory of liability and not a standalone cause of action.  Elliott v. Solis, No. 117CV01214LJOSAB, 2017 WL 4811747, at *7 (E.D. Cal. Oct. 24, 2017) (collecting cases), report and recommendation adopted, No. 117CV01214LJOSAB, 2017 WL 5292624 (E.D. Cal. Nov. 13, 2017); see also McCormack v. City & Cnty. of Honolulu, Civ. No. 10-00293 BMK, 2014 WL 692867, at *2 (D. Haw. Feb. 20, 2014) (explaining that respondeat superior is a theory of liability that can be asserted against an employer, but it "is not itself a cause of action or cognizable legal claim" (citation omitted)), aff'd, 683 F. App'x 649 (9th Cir. 2017).

Here, assuming that McShane seeks to hold the City liable for constitutional due process violations under a theory of respondeat superior, there is no vicarious liability under 42 U.S.C. § 1983.  The only vehicle for bringing a § 1983 claim against a municipality is pursuant to Monell v. Department of Social Services of City of N.Y., 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Monell claims require sufficient allegations that (1) the plaintiff was deprived of a constitutional right; (2) the municipality had a policy; (3) the

---

[12/]  The only party that addresses the respondeat superior claim is the Commission, Comm'n Mot. at 17-18, yet the claim is asserted only against the City.

policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. Mabe v. San Bernadino Cnty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1110-11 (9th Cir. 2001); see also Hyer v. City & Cnty. of Honolulu, No. CV 19-00586 HG-RT, 2020 WL 7038953, at *8 (D. Haw. Nov. 30, 2020) (describing the legal standards and pleading requirements for bringing a Monell claim). The Court has already held that McShane was not deprived of any federal constitutional right. Accordingly, without a predicate constitutional deprivation, the standalone claim for respondeat superior must fail.

### b. Supplemental Jurisdiction Over Remaining State Law Claims

Finally, the Court addresses the remaining state-law claims for breach of contract and due process under the Hawai`i State Constitution. Given the Court's dismissal of the federal claims, the Court will dismiss Count I (to the extent that it asserts a state constitutional claim) and Count II (the breach-of-contract claim) without prejudice to McShane refiling the claims in Hawai`i state court.

A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." See 28 U.S.C. § 1367(c)(3). The Supreme Court has noted that "in the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988), superseded on other grounds by statute as recognized in Fent v. Okla. Water Res. Bd., 235 F.3d 553, 557 (10th Cir. 2000). "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966); see, e.g., Park v. City & Cnty. of Honolulu, No. CV 17-00142 ACK-KSC, 2018 WL 3764084, at *16 (D. Haw. Aug. 8, 2018) (after dismissing federal claims, declining to exercise supplemental jurisdiction over state-law negligence claims), aff'd sub nom., 952 F.3d 1136 (9th Cir. 2020).

The Court has considered the appropriate factors under 28 U.S.C. § 1367 and finds that they weigh in favor of declining jurisdiction over McShane's remaining state-law breach-of-contract and constitutional claims. Accordingly, those claims

are DISMISSED WITHOUT PREJUDICE to McShane refiling in

Hawai`i state court.[13/]

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS the

Commission's Motion to Dismiss, ECF No. 21; GRANTS the City's

Motion to Dismiss or in the Alternative for Summary Judgment,

ECF No. 22; GRANTS the City's Motion for Joinder, ECF No. 25;

and GRANTS the Commission's Motion for Joinder, ECF No. 27, as

follows:

1.   Count II of the Complaint (breach of contract)

was withdrawn as against the Commission and is therefore

DISMISSED WITHOUT PREJUDICE as against the Commission.

2.   To the extent that it seeks monetary relief

against the Commission, Count I of the Complaint (due process

under the state and federal constitutions) is DISMISSED WITH

PREJUDICE.

3.   To the extent that it asserts a due process claim

under the Fourteenth Amendment of the U.S. Constitution against

---

[13/]   The statute of limitations on the state-law claims is tolled for the period that this federal case was pending.  See 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

the City, Count I of the Complaint is DISMISSED WITHOUT
PREJUDICE.  The Court denies leave to amend.

      4.    Count III (respondeat superior) is DISMISSED
WITHOUT PREJUDICE.  The Court denies leave to amend.

      5.    Having dismissed the federal constitutional
claims, the Court declines to exercise supplemental jurisdiction
over the remaining state-law claims:

          a.    To the extent that it asserts a due process
          claim under the Hawai`i State Constitution, Count I is
          DISMISSED WITHOUT PREJUDICE.

          b.    Count II of the Complaint (breach of
          contract) is likewise DISMISSED WITHOUT PREJUDICE.
There being no remaining claims in this case, the Clerk's Office
is DIRECTED to enter judgment and close the case.


      IT IS SO ORDERED.

      DATED:  Honolulu, Hawai`i, June 23, 2021.




_____
Alan C. Kay
Sr. United States District Judge


<u>McShane v. Department of Parks & Recreation, City & County of Honolulu, et</u>
<u>al.</u>, Civ. No. 20-00244 ACK-WRP, Order Granting the Commission's Motion to
Dismiss [ECF No. 21] and Granting the City's Motion for Judgment on the
Pleadings [ECF No. 22].